UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 20-50081 REDACTED SUPERSEDING INDICTMENT |
| Plaintiff, | |
| | WIRE FRAUD (18 U.S.C. § 1343) |
| vs. | |
| RENA M. HYMANS, | MONEY LAUNDERING (18 U.S.C. §§ 1956 and 1957) |
| Defendant. | |
| | MAIL FRAUD (18 U.S.C. § 1341) |
| | BANK FRAUD (18 U.S.C. § 1344) |

The Grand Jury charges:

## WIRE FRAUD

## (18 U.S.C. § 1343)

### Scheme and Artifice to Defraud

1.     At all times relevant to this Indictment, the defendant, Rena M. Hymans ("Hymans"), was a resident of South Dakota and was a licensed attorney and sole owner of Rena M Hymans PC ("RMH"), a corporation that offered legal services in South Dakota.

2.     Between February 2014 and January 2020, Hymans devised and intended to devise a scheme and artifice to defraud clients and enrich herself. As part of the scheme and artifice to defraud, Hymans fraudulently transferred

1

funds owned by clients but held in RMH's client trust account to RMH's business account and then to other accounts owned and controlled by Hymans knowing she was not entitled to the funds. Hyman then used the fraudulently obtained funds for her business and personal benefit.

3. Attorneys are required to hold money belonging to clients in a client trust account. The account must be a separate account from the attorney's own account. Upon receiving funds, the attorney is required to notify the client and promptly deliver to the client any funds the client is entitled to receive. Attorneys are required to keep complete records of the client trust account funds and may only withdraw funds as fees are earned or expenses incurred.

## Scheme and Artifice to Defraud - Gilbert Keester Estate

4. On February 24, 2014, Hymans deposited a check into RMH's client trust account from the Keepseagle Claims Administrator in the amount of $50,000.00. Hymans had been appointed the Special Administrator of the Gilbert Keester Estate and the $50,000.00 was to be held in RMH's client trust account for the benefit of the Gilbert Keester Estate.

5. Between February 2014 and November 2015, Hymans, in furtherance of the scheme and artifice to defraud made numerous fraudulent transfers from RMH's client trust account to RMH's operating account at First Interstate Bank. Rather than holding the money in RMH's client trust account until the Gilbert Keester Estate was settled as she was required to do, Hymans used the embezzled funds for business-related expenses for RMH or made

2

transfers to her personal bank accounts at First Interstate Bank, which she or her husband, Scott Hymans, used for their personal benefit. These fraudulent transfers caused the entirety of the $50,000.00 to be depleted.

6.     On numerous occasions between February 2014 and November 2015, after receiving the fraudulent funds, Hymans then transferred the fraudulently obtained funds from RMH's business account to her own personal bank account at First Interstate Bank in order to conceal or disguise the nature of the proceeds and the ownership or control of the proceeds. Hymans would then use the funds for her own personal benefit. In order to conceal her fraud and in furtherance of her scheme and artifice to defraud, Hymans told her legal assistant that transfers of funds from RMH's client trust account to RMH's business account were earnings for her legal services. Additionally, in order to conceal the fraud, Hymans provided documentation to RMH's income tax preparer that falsely reported the fraudulently obtained funds as earned income for her legal services.

7.     On or about May 31, 2016, in furtherance of the scheme and artifice to defraud, Hymans sent a letter via the United States Postal Service to Robert Martin, an attorney in Rapid City, South Dakota. Robert Martin represented one of the parties in the litigation involving the Gilbert Keester Estate. Hymans' letter to Robert Martin was in response to a letter Robert Martin had sent to Hymans requesting an accounting of the $50,000.00 that had been deposited into RMH's client trust account in February 2014. Hymans' letter to Robert Martin

contained materially false representations in that Hymans falsely stated in the letter that "No distributions have been made by the estate from the $50,000 held in trust" when, in fact, Hymans well knew that by May 31, 2016, she already spent the entirety of the $50,000.00 for her own business and personal benefit. At the time Hymans made this representation, RMH's client trust account had a balance of $2,060.39, which funds belonged to other clients.

8.      On May 1, 2018, Hymans appeared in the Oglala Sioux Tribal Court on behalf of the Gilbert Keester Estate as the Special Administrator.   In furtherance of her scheme and artifice to defraud, Hymans falsely told the Tribal Judge that the $50,000.00 she had deposited from the Keepseagle settlement for the benefit of the Gilbert Keester Estate had been in RMH's client trust account for a "very very long time." However, as Hymans well knew, at the time she made this representation to the Court, she had already spent the entirety of the $50,000.00 belonging to the Gilbert Keester Estate years earlier.

9.      On or about November 20, 2018, as part of her attempt to conceal her fraudulent use of the funds belonging to the Gilbert Keester Estate, Hymans wrote a $50,000.00 check from RMH's client trust account to Edward Jones for the benefit of the Gilbert Keester Estate.   However, at the time Hymans wrote this check, Hymans knew she had already completely depleted the funds rightfully belonging to the Gilbert Keester Estate for her own business and personal use.   Hymans also knew that the $50,000.00 check she wrote to

4

Edward Jones consisted of funds actually belonging to another client, the Leo Drillig Estate.

### Scheme and Artifice to Defraud - Leo Drillig Estate

10.    In November 2016, Doris Lauing ("Lauing") hired Hymans to represent Lauing's family member, Leo Drillig ("Drillig") in an estate matter. The estate matter was related to the death of Lauing's uncle, Leo Miller ("Miller"), who had left an inheritance for Drillig. Because Drillig was living in Germany, Lauing was acting as Drillig's personal representative in the United States.

11.    As part of her representation of Drillig, on May 4, 2017, Hymans deposited a cashier's check in the amount of $167,699.03 into RMH's client trust account at First Interstate Bank located in South Dakota. The amount represented Drillig's inheritance from Miller, which Hymans was supposed to disburse to Drillig.

12.    Between May 2017 and July 2019, Hymans devised and intended to devise a scheme and artifice to defraud Drillig and enrich herself. As part of the scheme and artifice to defraud, instead of disbursing the funds to Drillig as she was required to do, Hymans made numerous fraudulent transfers from RMH's client trust account to RMH's operating account at First Interstate Bank in 2017 through 2019 that caused Drillig's inheritance to be entirely depleted. Between May 2017 and July 2019, Hymans used the embezzled funds for her own personal use, including business-related expenses for RMH, or made transfers

5

to her personal bank accounts at First Interstate Bank, which she or her husband, Scott Hymans, used for their personal benefit.

13.     On numerous occasions between May 2017 and July 2019, after receiving the fraudulent funds, Hymans then transferred the fraudulently obtained funds from RMH's business account to her own personal bank accounts at First Interstate Bank in order to conceal or disguise the nature of the proceeds and the ownership or control of the proceeds. Hymans would then use the funds for her own personal benefit. In order to conceal her fraud and in furtherance of her scheme and artifice to defraud, Hymans told her legal assistant that transfers of funds from RMH's client trust account to RMH's business account were earnings for her legal services. Additionally, in order to conceal the fraud, Hymans provided documentation to RMH's income tax preparer that falsely reported the fraudulently obtained funds as earned income for her legal services.

14.     Between May 2017 and July 2019, Lauing made several attempts to get Hymans to disburse the inheritance funds to Drillig. In July 2019, Lauing hired an attorney to help retrieve Drillig's funds from Hymans, since Hymans was uncommunicative and not responsive to Lauing's multiple requests to disburse the funds. In furtherance of the scheme and artifice to defraud, Hymans sent e-mails to Lauing's attorney giving false explanations for the delay in disbursing Drillig's funds, including that Hymans was consulting with an attorney from the Gunderson Palmer law firm about whether to withhold her

6

attorney's fees from Drillig's inheritance before releasing the remaining funds. However, as Hymans well knew, by September 2019 she had already spent the entirety of Drillig's inheritance on business and personal expenses unrelated to her representation of Drillig.

15.     After Hymans failed to turn over the inheritance funds to Drillig, Lauing, through her attorney, filed a petition with the Fourth Judicial Circuit Court, Meade County, to force Hymans to disburse the funds. A hearing on the petition was held on January 3, 2020. Hymans, Lauing, and Lauing's attorney were present at the hearing. During that hearing, and in furtherance of the scheme and artifice to defraud, Hymans falsely told the court overseeing Drillig's estate that she was reluctant to disburse Drillig's funds because she was concerned he was trying to hide money in the United States. At the time Hymans made this representation to the court, Hymans knew she had already depleted all of Drillig's inheritance for her own business and personal benefit.

16.     At the conclusion of the hearing on the petition, the court ordered Hymans to pay over Drillig's funds, with the exception of $2,709.66, which Hymans claimed to have earned as attorney's fees. On the same day, Hymans provided a check in the amount of $163,969.37 to the estate of Leo Drillig drawn from RMH's client trust account at First Interstate Bank. At the time Hymans wrote the check to the estate of Leo Drillig, Hymans knew there were insufficient funds in her client trust account, in that Hymans had already spent the entirety

7

of the inheritance funds for her own benefit and only had a balance of $7,082.31 in her trust account, which funds belonged to other clients.

17.     Before providing the check to Lauing, and as part of the scheme and artifice to defraud, Hymans called First Interstate Bank and spoke with Kerrie Applegate, an employee of First Interstate Bank, and requested First Interstate Bank honor the check for approximately $163,969.37 despite knowing there were insufficient funds in RMH's trust account. Hymans falsely told Applegate that Hymans was going to be making a large deposit into her client trust account on January 6, 2020, which would cover the check she wrote to the Leo Drillig Estate. At the time Hymans provided this information to First Interstate Bank, Hymans knew she had no such deposits forthcoming. In fact, no deposit or deposits were made on January 6, 2020, or thereafter sufficient to cover the check Hymans wrote to the Leo Drillig Estate.

18.     On January 3, 2020, Lauing attempted to deposit the check Hymans issued for $163,969.37. However, First Interstate Bank advised there were insufficient funds in RMH's client trust account and that Lauing would be charged fees if she deposited it. On or about January 8, 2020, Lauing nonetheless deposited the $163,969.37 check. The check was returned for insufficient funds. At the time Lauing deposited the check, Hymans only had a balance of $10,252.31. In fact, in all of January 2020, Hymans only had deposits into RMH's trust account totaling $6,200.00.

8

19.   Lauing contacted Hymans and told Hymans there were insufficient funds in RMH's client trust account at First Interstate Bank.  Hymans then sent e-mails to Lauing falsely telling Lauing that First Interstate Bank told her there were sufficient funds in the trust account to cover the check and she did not know there was a problem with insufficient funds.  In fact, and as Hymans well knew, no representative at First Interstate Bank told her there were sufficient funds in her account because she had already spent the entirety of Drillig's inheritance for her own benefit.

20.   Since January 3, 2020, there have never been sufficient funds in RMH's client trust account to cover the $163,969.37 check Hymans wrote on January 3, 2020, to the Leo Drillig Estate.   Hymans defrauded Drillig of $167,699.03, by spending the entirety of Drillig's inheritance for her own personal benefit, minus reasonable fees agreed to by the court.

### WIRE FRAUD

### (18 U.S.C. § 1343)

21.   All of the allegations set forth in paragraphs 1-20 inclusive are hereby realleged and incorporated by reference as though fully set forth herein.

22.   On or about the following dates listed below, in the District of South Dakota and elsewhere, the defendant, Rena M. Hymans, devised the above-described scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and for the purposes of executing such scheme and artifice and attempting to do so,

unlawfully, willfully and knowingly did cause to be transmitted by means of wire communications in interstate commerce writings, signs, signals and sounds, to wit, the defendant, Rena M. Hymans, did fraudulently cause electronic transfers from the RMH client trust account at First Interstate Bank to the RMH business account at First Interstate Bank that she controlled and for which she was not entitled and did fraudulently write a check to another in the approximate amounts below:

| COUNT | DATE | METHOD | AMOUNT | ACCOUNT WHERE DEPOSITED |
|-------|------|--------|--------|-------------------------|
| 1 | 02/27/2014 | Electronic Funds Transfer | $6,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 2 | 05/14/2014 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 3 | 07/09/2014 | Electronic Funds Transfer | $4,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 4 | 09/15/2014 | Electronic Funds Transfer | $5,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 5 | 01/30/2015 | Electronic Funds Transfer | $20,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 6 | 06/26/2015 | Electronic Funds Transfer | $6,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 7 | 10/13/2015 | Electronic Funds Transfer | $5,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 8 | 11/4/2015 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |

| COUNT | DATE | METHOD | AMOUNT | ACCOUNT WHERE DEPOSITED |
|---|---|---|---|---|
| 9 | 06/27/2017 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 10 | 07/11/2017 | Electronic Funds Transfer | $1,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 11 | 08/21/2017 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 12 | 11/13/2017 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 13 | 12/05/2017 | Electronic Funds Transfer | $2,500.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 14 | 01/05/2018 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 15 | 02/05/2018 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 16 | 02/13/2018 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 17 | 03/14/2018 | Electronic Funds Transfer | $3,500.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 18 | 04/11/2018 | Electronic Funds Transfer | $5,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 19 | 04/19/2018 | Electronic Funds Transfer | $3,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 20 | 05/03/2018 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |

| COUNT | DATE | METHOD | AMOUNT | ACCOUNT WHERE DEPOSITED |
|---|---|---|---|---|
| 21 | 06/08/2018 | Electronic Funds Transfer | $3,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 22 | 07/10/2018 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 23 | 08/27/2018 | Electronic Funds Transfer | $5,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 24 | 09/04/2018 | Electronic Funds Transfer | $4,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 25 | 09/28/2018 | Electronic Funds Transfer | $9,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 26 | 11/20/2018 | Check 6373 | $50,000.00 | Check written to Edward Jones for the benefit of the Keester Estate |
| 27 | 11/20/2018 | Electronic Funds Transfer | $10,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 28 | 12/31/2018 | Electronic Funds Transfer | $3,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 29 | 01/06/2019 | Electronic Funds Transfer | $5,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 30 | 02/05/2019 | Electronic Funds Transfer | $3,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 31 | 02/26/2019 | Electronic Funds Transfer | $2,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |

| COUNT | DATE | METHOD | AMOUNT | ACCOUNT WHERE DEPOSITED |
|-------|------|--------|--------|--------------------------|
| 32 | 03/18/2019 | Electronic Funds Transfer | $6,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 33 | 04/15/2019 | Electronic Funds Transfer | $4,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 34 | 04/26/2019 | Electronic Funds Transfer | $5,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 35 | 05/03/2019 | Electronic Funds Transfer | $1,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 36 | 05/28/2019 | Electronic Funds Transfer | $3,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 37 | 06/03/2019 | Electronic Funds Transfer | $4,000.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |
| 38 | 07/10/2019 | Electronic Funds Transfer | $5,400.00 | RMH checking account at First Interstate Bank, controlled by Rena Hymans |

all in violation of 18 U.S.C. § 1343.

## MONEY LAUNDERING

## (18 U.S.C. § 1956)

23.    The allegations in paragraphs 1 through 20 inclusive are hereby realleged and incorporated by reference as though fully set forth herein.

24.    On or about the dates listed below, in the District of South Dakota and elsewhere, the defendant, Rena M. Hymans, did knowingly conduct and attempt to conduct the following financial transactions in the approximate

13

amounts listed below affecting interstate and foreign commerce, to wit, transfers between accounts controlled by the defendant, Rena M. Hymans, which involved the proceeds of a specified unlawful activity, that is, wire fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | WIRE FRAUD PROCEEDS USED IN TRANSACTION | DATE OF MONEY LAUNDERING TRANSACTION | AMOUNT | MONEY LAUNDERING TRANSACTION |
|---|---|---|---|---|
| 39 | On 02/27/2014, $6,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 02/27/2014 | $5,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 40 | On 05/14/2014, $2,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 05/14/2014 | $1,500.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |

| COUNT | WIRE FRAUD PROCEEDS USED IN TRANSACTION | DATE OF MONEY LAUNDERING TRANSACTION | AMOUNT | MONEY LAUNDERING TRANSACTION |
|---|---|---|---|---|
| 41 | On 07/09/2014, $4,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 07/09/2014 | $2,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 42 | On 09/15/2014, $5,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 09/15/2014 | $5,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 43 | On 06/26/2015, $6,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 06/26/2015 | $6,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 44 | On 11/04/2015, $2,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 11/04/2015 | $1,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |

| COUNT | WIRE FRAUD PROCEEDS USED IN TRANSACTION | DATE OF MONEY LAUNDERING TRANSACTION | AMOUNT | MONEY LAUNDERING TRANSACTION |
|---|---|---|---|---|
| | | | | |
| 45 | On 11/13/2017, $2,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 11/13/2017 | $700.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 46 | On 02/13/2018, $2,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 02/21/2018 | $1,200.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 47 | On 08/27/2018, $5,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 08/27/2018 | $1,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |

| COUNT | WIRE FRAUD PROCEEDS USED IN TRANSACTION | DATE OF MONEY LAUNDERING TRANSACTION | AMOUNT | MONEY LAUNDERING TRANSACTION |
|---|---|---|---|---|
| 48 | On 08/27/2018, $5,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 08/27/2018 | $2,000.00 | Transfer of funds from RMH business account at First Interstate Bank to RMH rent account controlled by Rena Hymans ending in 6830 at First Interstate Bank |
| 49 | On 09/04/2018, $4,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 09/04/2018 | $3,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 50 | On 11/20/2018, $10,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 11/20/2018 | $6,500.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 51 | On 01/06/2019, $5,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 01/07/2019 | $1,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |

17

| COUNT | WIRE FRAUD PROCEEDS USED IN TRANSACTION | DATE OF MONEY LAUNDERING TRANSACTION | AMOUNT | MONEY LAUNDERING TRANSACTION |
|---|---|---|---|---|
| 52 | On 04/15/2019, $4,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 04/15/2019 | $1,000.00 | Transfer of funds from RMH business account at First Interstate Bank to RMH rent account controlled by Rena Hymans ending in 6830 at First Interstate Bank |
| 53 | On 04/26/2019, $5,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 04/26/2019 | $3,300.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |
| 54 | On 05/28/2019, $3,000.00 transfer from RMH client trust account to RMH business account at First Interstate Bank | 05/28/2019 | $2,000.00 | Transfer of funds from RMH business account at First Interstate Bank to Rena and Scott Hymans personal account ending in 5351 at First Interstate Bank |

all in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## MONEY LAUNDERING

## (18 U.S.C. § 1957)

### Count 55

25.    The allegations in paragraphs 1 through 20 inclusive are hereby realleged and incorporated by reference as though fully set forth herein.

26.    On or about January 30, 2015, in the District of South Dakota, the defendant, Rena M. Hymans, did knowingly engage in a monetary transaction which involved criminally derived property of a value greater than $10,000.00, that is, the defendant, Rena M. Hymans transferred $20,000.00 from RMH's business account to her personal account held at First Interstate Bank, which funds in fact were derived from a specified unlawful activity, that is, wire fraud, all in violation of 18 U.S.C. § 1957(a).

### Mail Fraud

### (18 U.S.C. § 1341)

### Count 56

27.    The allegations in paragraphs 1 through 20 inclusive are hereby realleged and incorporated by reference as though fully set forth herein.

28.    On or about May 31, 2016, in the District of South Dakota, the defendant, Rena M. Hymans, having devised the above-described scheme and artifice to defraud and to obtain property by means of false pretenses, for the purpose of executing and in order to effect the scheme and artifice to defraud and obtain property, did knowingly cause to be delivered by the United States

19

Postal Service, an envelope containing mail matter, that is, a letter to Robert Martin located in Rapid City, South Dakota, falsely reporting that no distributions had been made from the $50,000.00 belonging to the Gilbert Keester Estate that was to be held in RMH's client trust account when, in fact, Hymans knew she had already depleted the funds in their entirety, all in violation of 18 U.S.C. § 1341.

## BANK FRAUD

## (18 U.S.C. § 1344)

### Count 57

28.   The allegations in paragraphs 1 through 20 inclusive are hereby realleged and incorporated by reference as though fully set forth herein.

29.   On or about January 2, 2020, in the District of South Dakota, the defendant, Rena M. Hymans, devised the scheme and artifice as set forth above to obtain money, funds, credits, assets, and securities owned by and under the custody and control of First Interstate Bank, a financial institutions as defined in 18 U.S.C. § 20, whose deposits were at the time insured by the FDIC, by means of false and fraudulent pretenses, representations, and promises; to wit, the defendant, Rena M. Hymans, falsely told First Interstate Bank that she would be making a large deposit on or about January 6, 2020, in order to cover the outgoing check for approximately $163,969.37 written to the estate of Leo Drillig on January 3, 2020, and fraudulently requested the bank to honor the check

when she was then well aware that no deposit was forthcoming and she did not have sufficient funds in her account, all in violation of 18 U.S.C. § 1344.

A TRUE BILL:

**Name Redacted**

_____
Foreperson

RONALD A. PARSONS, JR.
UNITED STATES ATTORNEY

By: _____

21